**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| | : |
| **v.** | : Case No. 21-MJ-8023-01-TJJ |
| | : |
| **WILLIAM CHRESTMAN,** | : |
| | : |
| | : |
| **Defendant.** | : |

**UNITED STATES MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through undersigned counsel, respectfully submits that Defendant William Chrestman be detained pending trial. Defendant Chrestman should be detained pursuant to 18 U.S.C. § 3142(f)(1)(E) because he committed a felony that involved the possession or use of a dangerous weapon, and under § 3142(f)(2)(A) because there is a serious risk that he will flee if released from custody, and under § 3142(f)(2)(B) because there is a serious risk that he will obstruct or attempt to obstruct justice; or will threaten, injure, or intimidate a prospective witness (or attempt to do so). As noted below, there are no conditions, or combination of conditions, which would ensure Defendant Chrestman's presence at trial or the safety of the community if he were to be released.

**THE CHARGES**

Defendant Chrestman is charged in the District of Columbia by criminal complaint with six counts – Conspiracy (18 U.S.C. § 371); Civil Disorder (18 U.S.C. § 231(a)(3)); Obstruction of an Official Proceeding (18 U.S.C. § 1512(c)(2)); Threatening to Assault a Federal Law Enforcement Officer (18 U.S.C. § 115(a)(1)(B)); Knowingly Entering or Remaining an any Restricted Building or Grounds without Lawful Authority and with a Dangerous Weapon (18 U.S.C. §§ 1752(a)(1) and (2); 18 U.S.C. § 1752(b)(1)(A)); and Disorderly Conduct on Capitol

Grounds (40 U.S.C. §§ 5104(e)(2)(D) and (G)).

Defendant Chrestman was arrested at his residence in the District of Kansas and is before the Court pursuant to Fed. R. Crim. P. Rule 5.

## **RELEVANT FACTS**

On January 6, 2021, a mob of rioters descended on the United States Capitol building in Washington, D.C., as part of a concerted effort to prevent a Joint Session of Congress from certifying the Electoral College results and declaring Joseph R. Biden, Jr., to be the 46th President of the United States of America.  Whereas some of these rioters traveled to Washington, D.C. individually, a number of extremist and militia groups coordinated together to gather in Washington, expressing in advance their intent to interfere with the Electoral College certification.

One such extremist group was the Proud Boys.  Proud Boys is a nationalist organization with multiple U.S. chapters and potential activity in other Western countries.  The group describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists."  Proud Boys members routinely attend rallies, protests, and other First Amendment-protected events, where certain of its members sometimes engage in acts of violence against individuals whom they perceive as threats to their values.  The group has an initiation process for new members, which includes the taking of an "oath."  Proud Boys members often wear the colors yellow and black, as well as other apparel adorned with Proud Boys-related logos and emblems.

Beginning as early as December 2020, public communications from Proud Boys organizers encouraged members of the Proud Boys to attend the January 6, 2021 demonstration in Washington, D.C.  Such communications included messages sent by the self-described chairman

of the Proud Boys, Enrique Tarrio. For example, on December 29, 2020, Tarrio posted a message on the social media site Parler about the demonstration planned for January 6, 2021. Among other things, Tarrio announced that the Proud Boys would "turn out in record numbers on Jan 6th but this time with a twist… We will not be wearing our traditional Black and Yellow. We will be incognito and we will be spread across downtown DC in smaller teams. And who knows….we might dress in all BLACK for the occasion." The statement about dressing in "all BLACK" is a reference to dressing like the group known as "Antifa," who the Proud Boys have identified as an enemy of their movement and are often depicted in the media wearing all black to demonstrations.

On January 6, 2021, a large group of Proud Boys were captured on publicly-available video marching in a group on Constitution Avenue, Northwest, in the area around First Street, Northwest. The group march was led by, among others, Proud Boys organizers Joseph Biggs and Ethan Nordean, who have both been charged in the District of Columbia by complaint.[1] The group was engaged in various chants and response calls, including "F*** Antifa!" and "Whose streets? Our streets!" Defendant Chrestman was within this group.

Defendant Chrestman was captured on publicly available video recordings interacting with several members of the Proud Boys near the Capitol before it was breached. The same group of Proud Boys were later captured on publicly-available video moving toward the pedestrian entrance to the

---

[1] On January 19, 2021, Joseph Biggs was charged in the District of Columbia by criminal complaint for violations of 18 U.S.C. §§ 1512(c) and 1752(a), and 40 U.S.C. §§ 5104(e)(2)(D) and (F). *United States v. Joseph Biggs,* 21-mj-126. On February 2, 2021, Ethan Nordean was charged in the District of Columbia by criminal complaint for violations of 18 U.S.C. §§ 1361, 2, and 1512(c)(2), among other charges, in connection with his actions at the U.S. Capitol on January 6, 2021. *United States v. Ethan Nordean,* 21-mj-195.

Capitol grounds on First Street, Northwest.  The group continued to be led by Proud Boy organizers Biggs and Nordean.

*Defendant Chrestman's Conduct at the Capitol on January 6, 2021*

Shortly before 1:00 p.m., a large crowd, including a large group of Proud Boys, gathered near the pedestrian entrance to the Capitol grounds on First Street.   The entrance was secured by a small number of U.S. Capitol Police, who stood behind a waist-high metal barrier.  Shortly thereafter, two men advanced toward the waist-high metal gate.   The crowd followed.  Defendant Chrestman moved to the front of the crowd during the initial confrontation with law enforcement.  A black helmet with a piece of orange tape hung from Defendant Chrestman's backpack.  This orange tape is similar in kind and character to the orange tape affixed to the headwear of others, including Felicia Konold, Cory Konold, Christopher Kuehne, and Louis Enrique Colon.[2]

Within minutes, the crowd overwhelmed the U.S. Capitol Police officers.   The metal barricades were toppled, and the crowd advanced toward the Capitol.   Within minutes, Defendant Chrestman, along with Felicia Konold and Cory Konold, moved past the barrier and placed themselves at or near the front of the crowd at the next police barrier.

As Capitol Police began to form another line closer to the Capitol, Defendant Chrestman was among those at the front of the crowd.  Defendant Chrestman stood directly in front of Capitol Police officers who were attempting to guard the Capitol.  Defendant Chrestman yelled at the Capitol Police officers, "You shoot and I'll take your fucking ass out!"  At a different point, Capitol Police officers attempted to arrest one person from the crowd, and Defendant Chrestman encouraged other members of

---

[2] Felicia Konold, Cory Konold, Christopher Kuehne, and Louis Enrique Colon are charged via complaint in the District of Columbia (case 2-mj-00218) with various offenses, including conspiracy, related to their role at the Capitol on January 6, 2021.

the crowd to stop the Capitol Police from arresting him. Among other things, Defendant Chrestman said to other members of the crowd, "Don't let them take him!"

The next police line was soon overwhelmed and outflanked by crowds of people as the crowd advanced to the front plaza of the U.S. Capitol. Defendant Chrestman moved to the front of the crowd and stood directly in front of law enforcement officers who were attempting to guard the Capitol. Defendant Chrestman put on the black helmet with orange tape, and he can be seen holding what appears to be a wooden club or axe handle, which had previously included a flag wrapped around it.

Shortly thereafter, Defendant Chrestman removed the black helmet and donned what appears to be a respirator. The helmet with orange tape that had been worn by Defendant Chrestman was then worn briefly by Cory Konold. As depicted in images, Felicia Konold helped Cory Konold put on the helmet.

Video footage taken during the event also captured Defendant Chrestman addressing the crowd of people who had unlawfully assembled on the Capitol grounds. At one point, Defendant Chrestman turned to face the crowd and shouted: "Whose house is this?" The crowd responded, "Our house!" Defendant Chrestman shouted, "Do you want your house back?" The crowd responded, "Yes!" Defendant Chrestman shouted back, "Take it!"

At another point while outside the Capitol, Defendant Chrestman, Felicia Konold, Cory Konold, and others used their hands and bodies in an effort to disrupt or dismantle the metal barriers that officers were using to control the crowd.

*Defendant Chrestman's Conduct Inside the Capitol on January 6, 2021*

Defendant Chrestman subsequently entered the U.S. Capitol. Video footage obtained from surveillance cameras inside the Capitol, along with open source video, depicts efforts by law enforcement officers to lower metal barriers in the tunnels underneath the Capitol. These metal barriers are designed

to seal off areas of the Capitol and were deployed in an effort to control the crowd. U.S. Capitol Police officers were positioned on the other side of the metal barriers, which were being lowered to prevent the crowd from advancing. Defendant Chrestman (along with others) took deliberate steps to prevent the barriers from closing. Defendant Chrestman used the wooden club or axe handle to obstruct the metal barriers.

*Search of Defendant's Residence*

On February 11, 2021, federal law enforcement officers executed a search warrant at Defendant Chrestman's home. Among the items recovered from the search were his cellular telephone. Of note, that phone was found in the dresser drawer of Defendant Chrestman's young child. Items not recovered during the search was any camouflage clothing or tactical gear similar to what Defendant Chrestman wore on January 6, 2021. Additionally, none of Defendant Chrestman's firearms were seen by the agents during the search of the residence. Defendant Chrestman has displayed a particular rifle on social media posts several times and the posts give the impression that the firearm has significant meaning to Defendant Chrestman. It is noteworthy that rifle was absent from Defendant Chrestman's home. (Investigating agents learned from one of Defendant Chrestman's associates that after January 6, 2021, Defendant Chrestman asked an associate to keep Defendant Chrestman's firearms.)

**ARGUMENT**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. *Id*.; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not

required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

At a detention hearing, the government's burden is to prove risk of flight by a preponderance of evidence and to prove dangerousness to any other person or the community by clear and convincing evidence. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

**1.    The United States' Stated Bases for Detention**

The United States seeks detention pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E), because Defendant Chrestman not only violently entered the U.S. Capitol without lawful authority, but he also went in carrying a dangerous weapon, that is, an axe handle, that he concealed initially with a flag. The United States also seeks detention pursuant to 18 U.S.C. § 3142(f)(2)(A), because Defendant Chrestman poses a serious risk of flight and under § 3142(f)(2)(B), because there is a serious risk that he will obstruct or attempt to obstruct justice, or will threaten, injure, or intimidate a prospective witness (or attempt to do so).

**2.    The Bail Reform Act Factors All Favor Detention Given Defendant's Risk of Flight and Danger to the Community**

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against Defendant Chrestman; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community

that would be posed by his release. As noted below, these factors weighs in favor of pretrial detention in this case.

### A. The Nature and Circumstances of the Offenses Charged Weigh in Favor of Detention

The nature and circumstances of the charged offenses weigh heavily in favor of detention. Defendant Chrestman, a member of a right-wing militia, knowingly and willfully participated in a riot that was designed to prevent the United States Congress from certifying the results of the 2020 Presidential election. Not only did Defendant Chrestman participate in the riot, he assumed a leadership role by shouting "Whose house is this?" and encouraging the crowd to "Take it!"

Words alone may never communicate the true nature of the crimes that were carried out on January 6. It is an event that cannot be measured in the number dead, injured, or wounded, but rather in the destabilizing effect that it has had on this country. This destabilizing effect is precisely what Defendant Chrestman envisioned when he decided to travel to the Capitol, helped lead others into the U.S. Capitol, and participated in the Proud Boys' participation in the riot at the Capitol building.

### B. The Weight of the Evidence Against the Defendant Weighs in Favor of Detention

The weight of the evidence against Defendant Chrestman weighs strongly in favor of detention. Dozens of videos and photographs exist to prove Defendant Chrestman's participation in the Capitol riot on January 6, 2021. The items seized from Defendant Chrestman's home on February 11, 2021, do not further corroborate his commission of the crimes charged, but the absence of any camouflage clothing or tactical gear worn on January 6, 2021, suggests he took specific acts to remove evidence linking him to the crimes committed.

Similarly, when agents surveilled Defendant Chrestman's home on January 19, 2021, they

noted the numbers for his address displayed on the home. Yet, a few days before the service of the search warrant those numbers were removed from the home. The missing numbers corresponds with Defendant Chrestman's efforts to remove all firearms from his home following the January 6, 2021 criminal activity and secreting his cellular telephone in his young child's dresser drawer. In other words, various actions to cover up or distance himself from the crimes committed.

### C. The Defendant's History and Characteristics Weigh in Favor of Detention

Though Defendant Chrestman's criminal record is limited with drug trafficking activity in the mid-1990's, his character weighs in favor of detention. Defendant Chrestman was the apparent leader of this particular cell of Proud Boys who violently stormed the Capitol on January 6. His violent actions and words on that day, especially directed toward U.S. Capitol Police Officers underscore Defendant Chrestman's contempt for the peaceful, orderly function of government. This shows that, if Defendant Chrestman were released, it is unlikely that he would abandon this ideology that led he and others to "take" the Capitol, as he directed them. Just more than one month has passed since this terrible incident, and still the Capitol remains on high alert. The Capitol and other seats of government, including those in the District of Kansas, are made less safe with the release of leaders of the violence on January 6, like Defendant Chrestman.

### D. The Danger to the Community Created by Defendant's Release, and the Risk of Defendant's Flight Both Weigh in Favor of Detention

#### i. *Defendant Poses a Substantial Risk of Danger to the Community*

Defendant Chrestman poses a substantial risk of danger to the community if he is released. His actions on January 6, 2021, demonstrated utter disregard for basic safety of others and a willingness to flout authority in support of mayhem. Defendant Chrestman encouraged others to

violate the law and took active measures to make it easier for others to violate the law by removing barriers and other conduct to obstruct U.S. Capitol Police. Defendant Chrestman readily recruited two individuals from Arizona to join the group of Kansas City Proud Boys, who then participated in the crime spree on U.S. Capitol grounds.

There is no reason to believe that Defendant Chrestman, or any of his Proud Boy associates, are any more interested in "complacency," or any less interested in fomenting rebellion than they were on January 5. If nothing else, the events of January 6, 2021, have exposed the size and determination of right-wing fringe groups in the United States, and their willingness to place themselves and others in danger to further their political ideology. Releasing Defendant Chrestman to rejoin their fold and plan their next attack poses a potentially catastrophic risk of danger to the community.

### ii. *Defendant Poses a Serious Risk of Flight*

Defendant Chrestman also poses a serious risk of flight. While he may have long-term ties to the Kansas City area, he demonstrated concerning behavior by removing the street address numbers from his home following his return after January 6, 2021. The removal of firearms, the disposal or removal of camouflage clothing, the disposal or removal of tactical gear, the disposal or removal of the respirator, the disposal or removal of the wood club or axe handle, and the secretion of his cellular phone in his young child's dresser drawer all point to calculated efforts to distance himself from the crimes committed on January 6, 2021. Those actions suggest responses to guilty acts, which leads to the conclusion that Defendant Chrestman is not amenable to conditions that could be imposed by this Court to ensure his appearance at future court hearings.

## **CONCLUSION**

There is no condition, or combination of release conditions, that could guarantee both Defendant Chrestman's presence for trial and the safety of the community if he is released. Further, the Bail Reform Act factors weigh in favor of detention in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that Defendant Chrestman be held without bond pending trial.

Respectfully submitted,

STEPHEN R. MCALLISTER
United States Attorney

By:   */s/   D. Christopher Oakley*
D. CHRISTOPHER OAKLEY, #19248
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730
(913) 551-6541 (fax)
Chris.Oakley@usdoj.gov

*/s/   Scott C. Rask*
SCOTT C. RASK, #15643
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730
(913) 551-6541 (fax)
Scott.Rask@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on February 12, 2021, I electronically filed this Motion for Detention with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel, but also sent via email to the following:

Che Ramsey
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas   66101
(913) 551-6712
Che_ramsey@fd.org
Attorney for defendant

                                        */s/ Scott C. Rask*
                                        SCOTT C. RASK, #15643
                                        Assistant United States Attorney