# In the United States District Court
# for the District of Kansas

**United States of America**,
        Plaintiff,

v.                                                              Case No. 21-mj-08023-TJJ

**William Chrestman**,
        Defendant.

## Detention Memorandum

The government asks for detention on three grounds: (1) serious risk of flight, (2) serious risk of obstruction, and (3) danger to the community. We address each in turn. Doc. 1 at 1.

1. **Serious risk of flight**.

The government points to very little in support of its argument that Mr. Chrestman poses a serious risk of flight. It relies instead on circumstances that it believes show "calculated efforts to distance himself from the crimes committed on January 6, 2021." Doc. 1 at 10. The government does not explain the causal link between "distancing" one's self from a crime and posing a serious risk of flight.

In any event, that causal link is empirically disproven by the facts of this case. Mr. Chrestman well knew that he was under investigation and may well face charges. He had been contacted by the Kansas City Star as early as January 24th

about his role in the Capitol Hill riot.[1] In a February 4th article, the Star related that multiple sources had identified him as a participant in the riot, and had so notified the FBI.[2] Mr. Chrestman's response was to contact counsel. Despite his looming arrest, the FBI found Mr. Chrestman at his home. Courts considering analogous cases have found evidence that a suspect understood his legal liability but did not flee powerfully contraindicating a finding that the suspect is a risk of flight.[3]

### 2. Serious risk of obstruction.

We make three points here. First, what is left to obstruct? The government says it has photographic and video evidence of Mr. Chrestman literally committing the charged crimes. Doc. 1 at 8. While we appreciate the government's desire to batten down the hatches concerning tertiary pieces of corroborative evidence, nothing Mr. Chrestman could do now could seriously obstruct this prosecution.

Second, the government relies on its belief that Mr. Chrestman divested himself of firearms at some point between January 6th and his arrest. Doc. 1 at 6. If true,

---

[1] Judy Thomas, *Proud Boy from Olathe Led Chants and Wielded Ax Handle Inside Capital at Jan. 6 Riot*, Kansas City Star, February 4, 2021, https://www.kansascity.com/news/local/article248869704.html (last visited 02/13/2021).

[2] *Id.*

[3] *See United States v. Hammond*, 204 F.Supp.2d 1157, 1166 (E.D. Wis. 2002) ("One year before his arrest ATF agents advised defendant that he was facing charges, and he did not abscond. This is strong evidence that defendant is not inclined to flee."); *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991) ("although Patriarca had known for some time that he was under FBI surveillance, he did not flee."); *United States v. Cruz*, 363 F.Supp.2d 40, 46 (D. Puerto Rico 2005) ("He has traveled abroad countless times during the past years on business or religious matters and always returned. The Court finds it most significant that he has been aware of his current predicament for bank fraud for some time now.")

that's precisely the kind of responsible behavior this Court should encourage. The government has not alleged that the firearms at issue were instrumentalities of the charged offenses. With knowledge that the FBI might arrest him at this home and search the premises (as the FBI did), removing firearms from the home operated to potentially de-escalate the situation.

Third, the government's evidence is a far cry from what courts have found constitutes sufficient evidence of a serious risk of obstruction justifying detention. Threatening to kill a witness,[4] injure a witness,[5] or manufacture false evidence[6] is the kind of stuff that gets one detained under 18 U.S.C. § 3142(f)(2)(B). More similar to our facts is *United States v. Demmler*, 523 F.Supp.2d 677 (S.D. Ohio 2007). There, the "Government allege[d] that Demmler talked about enlisting other defendants in the underlying Poulsen case in his and Poulsen's scheme[.]"[7] But whether the defendant "would have followed-up on these musings had he not been arrested, and whether he would do so now, are entirely speculative. It is just as

---

[4] *United States v. Fontanes-Olivo*, 937 F.Supp.2d 198, 201 (D. P.R. 2012) (Authorizing detention based on potential obstruction where defendant told witness that "one of 'his people,' could 'get rid of you' based on a rumor that the UM was cooperating with authorities.").

[5] *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) (When "defendant, if released, will attempt to injure or intimidate other prospective witnesses (and if the evidence supports said conclusion) then, too, detention is authorized").

[6] *United States v. Robertson*, 608 F.Supp.2d 89, 92 (D. D.C. 2009) ("Given the extraordinary lengths that these defendants went to in their efforts to tamper with witnesses and manufacture utterly false, misleading evidence at trial—and in light of their proven success in achieving a hung jury in one trial already—this Court ultimately has no choice but to detain these defendants prior to trial.").

[7] *Demmler*, 523 F.Supp.2d at 683.

likely, on this record, that Demmler's arrest on federal charges has chastened, rather than emboldened, him."[8] So too here.

### 3. Danger to the community.

We see the government's point here; exhibiting the profound lack of judgment necessary to decide to storm the United States Capitol would often augur poorly for a defendant's success on pretrial release. But for Mr. Chrestman and the world around him, much has changed. As in *Demmler*, Mr. Chrestman's arrest on federal charges has chastened, rather than emboldened, him."[9] We take the § 3142(g) factors in order.

#### 3.1    The nature and circumstances of the offense.

Mr. Chrestman's charged offenses are not crimes of violence, violations of § 1591, a federal crime of terrorism, and do not involve a minor victim, controlled substance, firearm, explosive, or destructive device.[10] They are serious. To prefigure how those offenses relate to the likelihood of Mr. Chrestman succeeding on pretrial release, we must start long before January 6.

---

[8] *Id.*; *See also United States v. Simon*, 760 F.Supp. 495 (D. V.I. 1990) (Detention inappropriate even when defendant attempted to speak with a juror in his brother's murder trial; although "conduct is inexcusable, it is a far cry from the venality, corruption and violence of the sort common in organized-crime cases, designed to destroy the integrity of the criminal justice system.")

[9] *Demmler*, 523 F.Supp.2d at 683.

[10] 18 U.S.C. § 3142(g)(1).

It is an astounding thing to imagine storming the United States Capitol with sticks and flags and bear spray, arrayed against armed and highly trained law enforcement. Only someone who thought they had an official endorsement would even attempt such a thing. And a Proud Boy who had been paying attention would very much believe he did.

They watched as their "pro-America, pro-capitalism and pro-Trump" rhetorical strategy "allowed the Proud Boys to gain entry into the Republican mainstream."[11] They watched as law enforcement attacked Black Lives Matter and anti-fascism protestors, but escorted Proud Boys and their allies to safety.[12] They watched as their leader, Enrique Tarrio, was named Florida state director of Latinos for Trump.[13] They watched the Trump campaign, "well aware of the organized participation of Proud Boys rallies merging into Trump events. They don't care."[14] They watched when then-President Trump, given an opportunity to disavow the Proud Boys, instead told them to "stand back and stand by."[15] They understood that phrase as "a call to arms and preparedness. It suggests that these

---

[11] Brendan O'Connor, The Guardian, *Trump's Useful Thugs: How the Republican Party Offered a Home to the Proud Boys*, https://www.theguardian.com/news/2021/jan/21/donald-trump-useful-thugs-proud-boys-far-right-republican-party (last visited 02/15/2021).

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] Dr. Kathleen Belew, New York Times, *Why Stand Back and Stand By Should Set Off Alarm Bells*, available at https://www.nytimes.com/2020/10/02/opinion/trump-proud-boys.html (last visited 02/15/2021).

groups, who are eager to do violence in any case, have the implicit approval of the state."[16] Having seen enough, the Proud Boys (and many others who heard the same message)[17] acted on January 6.

Their calculations were wrong. The five weeks since January 6 have broken the fever dream. The Proud Boys are "radioactive now."[18] Any "air of respectability is gone."[19] The Proud Boys are in "disarray, as state chapters disavow the group's chairman and leaders bicker in public and in private about what direction to take the Proud Boys in."[20] Their leader was arrested, then "outed as a longtime FBI informant, a role he has now admitted to."[21] And not insubstantially, a number of their members have been arrested for their roles in the January 6 attack.

The government says that "[r]eleasing Defendant Chrestman to rejoin [the Proud Boys'] fold and plan their next attack poses a potentially catastrophic risk of danger to the community." Doc. 1 at 10. We think that's wrong. The world is a much different place since January 6. The Proud Boys are enfeebled. President Trump is now former president Trump. And Mr. Chrestman has experienced the clarity of

---

[16] *Id*.

[17] *Id* ("Other groups aligned with the white power movement will certainly interpret Mr. Trump's message as including them. ")

[18] Will Carless, USA Today, 02/12/2021, available at https://www.usatoday.com/story/news/nation/2021/02/12/proud-boys-splintering-after-capitol-riot-revelations-leader/6709017002/ (last visited 02/12/2021).

[19] *Id*.

[20] *Id*.

[21] *Id*.

perspective sometimes imparted by a federal prosecution and associated incarceration.

It may be a small thing, but we're struck by the tone of a conversation that Mr. Chrestman had with a Kansas City Star reporter on January 26. When contacted for comment, Mr. Chrestman did not take the opportunity to glorify the January 6 attack, or to espouse the ideology of the Proud Boys. He replied only, "I appreciate you asking my side, even though I can't comment. Thank you very much. You have a great day, ma'am."

### 3.2   The weight of the evidence.

Even if the facts are just what the government says, Mr. Chrestman likely has a viable defense. Acting at the behest or permission of federal officials has long been recognized as a defense to criminal charges, regardless of the charged crime's required *mens rea*.[22] If a federal official directs or permits a citizen to perform an act, the federal government cannot punish that act under the Due Process Clause. We discuss the Supreme Court cases establishing this rule in order.

In *Pennsylvania Indus. Chem. Corp.* (PICCO), the government charged a manufacturing corporation with pollution (discharging industrial refuse into a river without a permit) under the Rivers and Harbors Act. 411 U.S. at 658-59. The district court refused to permit PICCO to present evidence at trial that it had relied on longstanding Army Corps of Engineers regulations, and "that it was

---

[22] *See United States v. Pennsylvania Indus. Chem. Corp.*, 411 U.S. 655 (1973); *Cox v. Louisiana*, 379 U.S. 559 (1965); *Raley v. Ohio*, 360 U.S. 423 (1959).

affirmatively misled . . . into believing that the law did not apply in this situation." *Id*. at 673-74. The Third Circuit reversed, and the Supreme Court affirmed: "[T]o the extent that the regulations deprived PICCO of fair warning as to what conduct the Government intended to make criminal, we think there can be no doubt that traditional notions of fairness inherent in our system of criminal justice prevent the Government from proceeding with the prosecution." *Id*. at 674.

In *Cox*, demonstrators were told by "the highest police officials of the city, in the presence of the Sheriff and Mayor" that they could hold a demonstration across the street from a courthouse. 379 U.S. at 571. Defendant Cox was thereafter arrested, prosecuted, and convicted for violating a state anti-picketing statute. The Supreme Court held that "[t]he Due Process Clause does not permit convictions to be obtained under such circumstances." *Id*. The Court explained that "to sustain appellant's later conviction for demonstrating where they told him he could 'would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him.'" *Id*. (citing *Raley*).

In *Raley*, the Supreme Court reversed the contempt convictions of three witnesses on similar grounds. The witnesses had been told by a state legislative "Un-American Activities Commission" before which they had been summoned that they had a right to rely on their privilege against self-incrimination. This advice was incorrect—state law in fact deprived them of the privilege by immunizing their testimony. The state thereafter prosecuted the witnesses for contempt. On review,

the Supreme Court found "no suggestion that the Commission had any intent to deceive the appellants," but held nonetheless that affirming the convictions "after the Commission had acted as it did would be to sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." 360 U.S. at 438. Pointing out that the witnesses had been subjected to "active misleading" by "the voice of the State most presently speaking" to them, the Court concluded that "[w]e cannot hold that the Due process clause permits convictions to be obtained under such circumstances." *Id*. at 439.

We don't intend to try this case in full on Wednesday. But in evaluating the weight of the evidence, the Court should consider the statement of Senator Mitch McConnell explaining his vote in the impeachment trial.

> Fellow Americans beat and bloodied our own police. They stormed the Senate floor. They tried to hunt down the Speaker of the House. They built a gallows and chanted about murdering the Vice President. They did this because they had been fed wild falsehoods by the most powerful man on Earth — because he was angry he'd lost an election.
>
> Former President Trump's actions preceding the riot were a disgraceful dereliction of duty. The House accused the former President of, quote, 'incitement.' That is a specific term from the criminal law. Let me put that to the side for one moment and reiterate something I said weeks ago: There is no question that President Trump is practically and morally responsible for provoking the events of that day**. The people who stormed this building believed they were acting on the wishes and instructions of their President.** (emphasis supplied).

> And their having that belief was a foreseeable consequence of the growing crescendo of false statements, conspiracy theories, and reckless hyperbole which the defeated President kept shouting into the largest megaphone on planet Earth. The issue is not only the President's intemperate language on January 6th. It is not just his endorsement of remarks in which an associate urged 'trial by combat.' It was also the entire manufactured atmosphere of looming catastrophe; the increasingly wild myths about a reverse landslide election that was being stolen in some secret coup by our now-President.[23]

The Capitol Hill rioters were actively misled by "the voice of the State most presently speaking"[24]; former President Donald Trump. Trump told the assembled rabble what they must do; they followed his instructions. Then, he ratified their actions, cementing his symbiotic relationship with the rioters.



---

[23] Remarks of Sen. Mitch McConnell, transcribed at https://www.cnn.com /2021/02/13/ politics/mcconnell-remarks-trump-acquittal/index.html. (last visited 2/13/2021).

[24] *Raley* at 439.

Convicting "a citizen for exercising a privilege which the State had clearly told him was available to him" violates the Due Process Clause.[25] The former President gave that permission and privilege to the assembled mob on January 6.[26] Trump's incitement and enablement of this insurrectionary riot weighs heavily against the weight of the evidence prong, because the mob was given explicit permission and encouragement by the former President to do what they did. The American head of state directed a specific action; the Due Process Clause says that those who obeyed him have a viable defense against criminal liability.

### 3.3    History and characteristics of the person.

Mr. Chrestman is an army veteran and union sheet metal worker.[27] A long-time resident of Olathe, Kansas, Mr. Chrestman does not appear to have any

---

[25] *Cox* at 571

[26] https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial (last visited 2/13/2021) ("And we fight. We fight like hell. And if you don't fight like hell, you're not going to have a country anymore."); ("Our country has had enough. We will not take it anymore and that's what this is all about. And to use a favorite term that all of you people really came up with: We will stop the steal."); ("They're all running around like chickens with their heads cut off with boxes. Nobody knows what the hell is going on. There's never been anything like this. We will not let them silence your voices. We're not going to let it happen, I'm not going to let it happen. *(Audience chants: "Fight for Trump.")*; ("Democrats attempted the most brazen and outrageous election theft and there's never been anything like this. So pure theft in American history. Everybody knows it."); ("Now, it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down."); ("Because you'll never take back our country with weakness. You have to show strength and you have to be strong. We have come to demand that Congress do the right thing and only count the electors who have been lawfully slated, lawfully slated."); ("They want to recertify. But the only way that can happen is if Mike Pence agrees to send it back. Mike Pence has to agree to send it back." (Audience chants: "*Send it back*."); ("Make no mistake, this election was stolen from you, from me and from the country."); ("And fraud breaks up everything, doesn't it? When you catch somebody in a fraud, you're allowed to go by very different rules."); ("We won in a landslide. This was a landslide. They said it's not American to challenge the election. This the most corrupt election in the history, maybe of the world.").

[27] See Attachment 1 (employment records).

scoreable criminal history. We are aware of no failure to appear at any court hearing. He has a family that loves him. He does not abuse drugs or alcohol, and does not suffer from any mental health condition. He was not on probation, parole, or any other kind of supervision at the time of the charged offense. He does not have the kind of substantial personal or business relationships in any other jurisdiction that would cause or enable him to seek refuge elsewhere.

### 3.4  Danger to the community.

We have presented our argument concerning Mr. Chrestman's potential danger to the community in section 3.1.

[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."[28]  "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence."[29]  Section 3142(g) requires the Court to consider various factors and the "nature and circumstances of the offense charged" and the "weight of the evidence" are but two. The governments motion rests solely on these two factors which as explained above do not support that Mr. Chrestman has any potential to be a danger to the community or will fail to appear at future court appearances. Mr. Chrestman's alleged actions following the January 6th event coupled with his history and characteristics all weigh in favor of release. Mr. Chrestman should be

---

[28] *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991)
[29] *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003)

released because he is not a danger to the community, poses no serious risk of flight and no serious risk that he will obstruct or attempt to obstruct justice; or will threaten, injure, or intimidate a prospective witness.

Respectfully submitted,

s/ Kirk C. Redmond
KIRK C. REDMOND, #18914
First Assistant Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603
Phone: 785-232-9828
Fax: 785-232-9886
Email: Kirk_Redmond@fd.org
Attorney for Defendant


s/Chekasha Ramsey
CHEKASHA RAMSEY, #78476
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Phone: 913-551-6712
Fax: 913-551-6562
Email: che_ramsey@fd.org
Attorney for Defendant


**CERTIFICATE OF SERVICE**

I certify that on February 16, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

s/ Kirk C. Redmond
KIRK C. REDMOND, #18914