1                       UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF KANSAS
2

3      UNITED STATES OF AMERICA,

4          Plaintiff,

5      v.                              Case No.    21-mj-8022
                                                   21-mj-8023
6      CHRISTOPHER KUEHNE
       WILLIAM CHRESTMAN,
7                                      Kansas City, Kansas
           Defendants.                Date:   February 12, 2020
8      ....................

9                             TRANSCRIPT OF
10     INITIAL APPEARANCE IN RULE 5(c)(3) PROCEEDINGS
                  BEFORE THE HONORABLE JAMES P. O'HARA
11                UNITED STATES MAGISTRATE JUDGE

12     APPEARANCES:

13     For the Plaintiff:
       Mr. Scott C. Rask
14     United States Attorney's Office
       360 U.S. Courthouse
15     500 State Avenue
       Kansas City, Kansas 66101
16
       For the Defendant Christopher Kuehne:
17     Mr. Robin D. Fowler
       Bath & Edmonds, P.A.
18     7944 Santa Fe Drive
       Overland Park, Kansas 66204-3643
19
       For the Defendant William Chrestman:
20     Ms. Chekasha Ramsey
       Federal Public Defender's Office
21     201 U.S. Courthouse
       500 State Avenue
22     Kansas City, Kansas 66101

23     Mr. Kirk C. Redmond
       Federal Public Defender's Office
24     117 Southwest Sixth Street
       Suite 200
25     Topeka, Kansas 66603

```
 1              (10:34 a.m., proceedings commenced).

 2         THE COURT:  This is Magistrate Judge James O'Hara.

 3   And at this time the court calls the criminal case filed in the

 4   United States District Court for the District of Columbia

 5   styled United States versus William Chrestman and Christopher

 6   Kuehne and other individuals.  In the D.C. Court that is Case

 7   No. 21-218.

 8         Upon the arrest of Messrs. Chrestman and Kuehne here

 9   in the District of Kansas, the former has been assigned to Case

10   No. 21-8023 in the District of Kansas and the latter to Case

11   No. 21-8022.

12         Counsel, would you please note your appearances for

13   the record.

14         MR. RASK:  May it please the court.  The United States

15   appears by Scott Rask.

16         MR. FOWLER:  May it please the court.  Your Honor, Mr.

17   Kuehne appears in person via Zoom and by and through Robin

18   Fowler.

19         MS. RAMSEY:  And good morning, Your Honor.  Che Ramsey

20   and Kirk Redmond on behalf of William Chrestman, who appears by

21   video.

22         THE COURT:  The record should reflect that soon after

23   the arrest of these two defendants here in Kansas we're

24   convened today to conduct the initial appearance consistent

25   with the Federal Rules of Criminal Procedure.
```

 1          I would note that consistent with the CARES Act
 2   legislation enacted last year and due to the ongoing COVID-19
 3   pandemic, we're convened by Zoom video conference today as
 4   opposed to everybody being in the courtroom.
 5          Mr. Rask, does the government consent to proceeding by
 6   way of video conference today?
 7          MR. RASK:  Yes, Your Honor.
 8          THE COURT:  Mr. Fowler, does Defendant Kuehne also
 9   consent?
10          MR. FOWLER:  Yes, Your Honor.
11          THE COURT:  Ms. Ramsey, does Defendant Chrestman also
12   consent?
13          MS. RAMSEY:  Yes, Your Honor.
14          THE COURT:  Very well.  I also want to note that
15   evidently due to the public interest in this case, we have a
16   number of people who have patched in with a teleconference link
17   provided by the court.  We also have some other people, whether
18   it be family members or members of the press, that may be
19   participating in the Zoom video conference.
20          Lest there be any confusion about this later on, I
21   want to make crystal clear to everybody the court's policies
22   and rules in this regard.  Under long-standing policy of the
23   United States Judicial Conference, which sets policy for all 94
24   federal districts across the country, and also the standing
25   orders of this court, no filming or other electronic recording

1    of these proceedings is permitted other than by court

2    personnel.

3          In the hopefully unlikely event that anybody should

4    violate that admonition, please keep in mind that stiff

5    sanctions could and presumably would follow.

6          Would the courtroom deputy please swear in both of the

7    defendants.

8                    (Defendants sworn).

9          THE COURT:  Did both defendants respond?

10         MR. FOWLER:  Yes, Your Honor, I believe so.

11         THE COURT:  Okay.  So I can tell these individuals

12   apart, which of the two defendants is wearing glasses?

13         MS. RAMSEY:  Mr. Chrestman.

14         THE COURT:  Okay.  Mr. Chrestman is the individual

15   wearing glasses.  Is that correct, Ms. Ramsey?

16         MS. RAMSEY:  Yes.

17         THE COURT:  Very well.  Okay.  Mr. Kuehne and Mr.

18   Chrestman, as I mentioned, we're here today for the initial

19   appearance as relates to a criminal case which has been filed

20   against you and other individuals in federal court in the

21   District of Columbia.

22         The basic purpose of today's proceedings is simply to

23   make sure that each of you understand the nature of the charges

24   that have been asserted against you in particular.  We'll also

25   be advising you of the penalties that would apply in the event

1   that you're convicted of any of those charges.  I will also be

2   formally advising you of your rights as they apply to this case

3   under the Constitution, confirming your retention of private

4   counsel or possibly the need for appointment of counsel.

5          We'll be taking up certain scheduling issues, such as

6   the date of the next court appearance.  And perhaps, most

7   importantly, we'll be having a discussion at least

8   preliminarily as to both of you with regard to whether

9   conditions of release might be set between now and the

10  conclusion of the case or whether one or both of you ought to

11  be detained, that is jailed, until the case is concluded.

12         Gentlemen, before we go any further, I do wish to

13  advise both of you that under the Constitution you have the

14  right to remain silent.  As this case moves forward, please

15  keep in mind that except for private discussions that relate to

16  the case between you and your own lawyer, virtually anything

17  that you say to anyone anywhere could be used against you

18  later.  So as a general proposition, you ought to be very

19  careful about what you say and to whom you say it.

20         Given the felony nature of the charges presented in

21  this case, both of you have the constitutional right to be

22  represented by a lawyer.  If you have the ability financially

23  to retain your own, you're free to do that of your own

24  choosing.  If it's documented to the court recently that you

25  cannot afford your own lawyer, then we'll appoint a lawyer to

1    represent you at no cost.

2          Now, regardless of whether you have retained or

3    appointed counsel, you have the right to confer or talk with

4    that lawyer during all court proceedings, including today.  So,

5    for example, if either of you need to visit with your

6    respective lawyer during the course of today's proceedings,

7    just let me know that and I'll have my courtroom deputy place

8    you and your lawyer in a separate breakout room where you can

9    visit confidentially.

10          You also have the right to confer with your lawyer

11   before or during any questioning of you by the authorities.

12   And if you'd like to have your lawyer seated with you during

13   that process, you may do so.

14          If you decide to make a statement to the authorities

15   or answer any questions they ask you, regardless of whether

16   your lawyer is present, you have the right to stop at any time.

17   And that's true if you've already made some kind of statement

18   or answered any questions that the authorities may have asked

19   you.

20          Finally, even in the unlikely event that either of you

21   were to waive or give up your right to be represented by a

22   lawyer during this morning's court proceedings, you could

23   insist upon that right during any later hearing.

24          Mr. Chrestman, do you understand your constitutional

25   rights as I've just explained them to you?

1      DEFENDANT CHRESTMAN:  Yes, sir.

2      THE COURT:  Mr. Kuehne or Kuehne, excuse me, do you

3  understand your rights, sir?

4      DEFENDANT KUEHNE:  Yes, sir, I do.

5      THE COURT:  Mr. Chrestman, during the last 48 hours,

6  have you consumed any alcoholic beverages or taken any drugs,

7  medicines or pills of any kind, whether they be prescription

8  drugs, street drugs or otherwise?

9      DEFENDANT CHRESTMAN:  Just prescription, sir.

10      THE COURT:  What kind of prescription drugs?

11      DEFENDANT CHRESTMAN:  Painkillers.

12      THE COURT:  Okay.  Do those painkillers impair or hurt

13  your ability to understand what's going on around you?

14      DEFENDANT CHRESTMAN:  No, sir.

15      THE COURT:  Is it fair to say, Mr. Chrestman, that

16  you're able to concentrate and think clearly this morning?

17      DEFENDANT CHRESTMAN:  Yes, sir.

18      THE COURT:  Mr. Kuehne, how about you, have you taken

19  any drugs, medicines or pills of any kind, consumed any alcohol

20  during the last 48 hours?

21      DEFENDANT KUEHNE:  No, sir.

22      THE COURT:  Mr. Chrestman, are you currently under the

23  care of any physician, psychiatrist, psychologist or other

24  health care provider?

25      DEFENDANT CHRESTMAN:  Yes, family doctor, sir.

```
 1              THE COURT:  Okay.  The same person that prescribed the
 2   prescription -- the medicines that you mentioned a moment ago?
 3              DEFENDANT CHRESTMAN:  Yes, sir.
 4              THE COURT:  And specifically what are you being
 5   treated for as best you understand it?
 6              DEFENDANT CHRESTMAN:  I have a lot of nerve damage
 7   down in my lower back and both legs due to a herniated and then
 8   ruptured L5-S1 disc that it took two years to get the surgery
 9   for while I was working.
10              THE COURT:  Mr. Kuehne, how about you, are you
11   currently under the care of any physician, psychiatrist,
12   psychologist or other health care provider?
13              DEFENDANT KUEHNE:  Multiple, yes, sir.
14              THE COURT:  Okay.  Tell me about that just very
15   briefly, if you would please.
16              DEFENDANT KUEHNE:  I am seen at Department of Veteran
17   Affairs in Kansas City for traumatic brain injury, PTSD,
18   multiple injuries to my L5-S1, cardiothoracic area, neck.  I
19   mean, I've got a spinal cord stimulator implant.  There's a lot
20   of stuff.  I see a mental health counselor.
21              THE COURT:  Okay.  Despite the various physical and
22   emotional or at least mental issues that you describe, are you
23   able to concentrate and think clearly today?
24              DEFENDANT KUEHNE:  Yes, sir.  Yes, I am.
25              THE COURT:  Okay.  Mr. Chrestman, beyond that that
```

1  we've already talked about, is there any other condition -

2  whether it be physical, mental or otherwise - that would

3  prevent you from understanding what's going on in court today?

4          DEFENDANT CHRESTMAN:  No, sir.

5          THE COURT:  How about you, Mr. Kuehne?

6          DEFENDANT KUEHNE:  No, sir.

7          THE COURT:  Mr. Chrestman, where were you born?

8          DEFENDANT CHRESTMAN:  Are you -- I'm sorry, Your

9  Honor, you cut out.  Could you repeat that?

10          THE COURT:  Sure.  Where were you born?

11          DEFENDANT CHRESTMAN:  When was I born?

12          THE COURT:  Where?

13          DEFENDANT CHRESTMAN:  Oh, sorry.  Oxnard, California.

14          THE COURT:  And have you always been and still are

15  today a citizen of the United States?

16          DEFENDANT CHRESTMAN:  Yes, sir.

17          THE COURT:  And what's the extent of your formal

18  education?

19          DEFENDANT CHRESTMAN:  College graduation, some high

20  school and trade school.

21          THE COURT:  So are you able to read and write --

22          DEFENDANT CHRESTMAN:  Some college and trade school,

23  Your Honor.

24          THE COURT:  I'm sorry.  Repeat that part about the

25  college, if you would please.

1      DEFENDANT CHRESTMAN:  Sorry about that.  I have a high

2  school degree and some college and completion of trade schools.

3      THE COURT:  Okay.  So fair to say you're able to read

4  and write at least at the college level.  True?

5      DEFENDANT CHRESTMAN:  Yes, entry level college at

6  least.

7      THE COURT:  Okay.  Fair enough.

8      Mr. Kuehne, how about you, where were you born, sir?

9      DEFENDANT KUEHNE:  Chicago, Illinois.

10      THE COURT:  And like Mr. Chrestman, you always have

11  been and still are today a citizen of the United States?

12      DEFENDANT KUEHNE:  Yes, sir.

13      THE COURT:  And how about the extent of your formal

14  education?

15      DEFENDANT KUEHNE:  Master's degree.

16      THE COURT:  Okay.  So you're able to read at the

17  post-graduate level.  True?

18      DEFENDANT KUEHNE:  That is correct.

19      THE COURT:  Mr. Chrestman, have you been provided a

20  copy of the complaint and the arrest warrant in the case?

21      DEFENDANT CHRESTMAN:  I'm sorry, sir, you're

22  breaking -- you broke up again.

23      THE COURT:  Have you been provided a copy of the

24  complaint and the arrest warrant in this case?

25      DEFENDANT CHRESTMAN:  Yes, sir.

```
 1          THE COURT:  And do you have those on the desk there in
 2   front of you in the marshals lockup area?
 3          DEFENDANT CHRESTMAN:  (Indicating).  Yes.
 4          THE COURT:  Did you respond "yes," sir?
 5          DEFENDANT CHRESTMAN:  Yes, I have them sitting in
 6   front of me, sir.
 7          THE COURT:  Okay.  Mr. Kuehne, how about you, have you
 8   likewise been provided copies of those documents?
 9          DEFENDANT KUEHNE:  I have nothing and I have seen
10   nothing.  My attorney has it.
11          THE COURT:  Okay.  Mr. Chrestman, before we started
12   today's hearing, would it be a fair statement that in
13   anticipating appointment, you did have an opportunity to visit
14   with Ms. Ramsey from the Federal Public Defender's Office?
15          DEFENDANT CHRESTMAN:  I spoke with her on the phone.
16          THE COURT:  Okay.  And briefly discussed the nature of
17   the charges against you?
18          DEFENDANT CHRESTMAN:  Are you talking -- in regards to
19   this morning?
20          THE COURT:  Yes, sir.
21          DEFENDANT CHRESTMAN:  Yes, sir.
22          THE COURT:  Okay.  And, Mr. Kuehne, you've got private
23   and retained counsel, did you likewise visit with Mr. Fowler
24   before we started today's hearing?
25          DEFENDANT KUEHNE:  That is affirmative, sir.
```

21-mj-8022/8023   USA v. Kuehne/Chrestman   02.12.20          12

1          THE COURT:  Mr. Kuehne, in your situation I've been

2   informed that you've privately retained Mr. Fowler, who's a

3   well-respected -- highly-respected, I should say, criminal

4   defense lawyer here in the Kansas City community.

5          Mr. Kuehne, are you confident that you have financial

6   resources available to you to ensure that Mr. Fowler stays in

7   this case from start to finish?

8          DEFENDANT KUEHNE:  Yes, sir.

9          THE COURT:  Okay.  And, Mr. Fowler, any reason to

10  disagree with that?

11         MR. FOWLER:  No, Your Honor.  Although as the court is

12  aware, this case is out of D.C.  I will talk to my client and

13  his family.  It may very well make sense to have other counsel,

14  and I will keep the court fully advised as to that status.  And

15  if he needs to have someone appointed or -- I'll follow up with

16  that.  But for certain right now, I'm in to get through these

17  proceedings and to get the case to D.C.

18         THE COURT:  Very well, Mr. Fowler.

19         Mr. Kuehne, I want to be clear with you about how this

20  would work.  It sounds like Mr. Fowler is still exploring

21  options in terms of how your representation is handled -- to be

22  handled at such time that you appear first in federal court in

23  the District of Columbia.

24         If it turns out that you're financially unable to bear

25  the expense of your representation there, in terms of the

1  following through that Mr. Fowler mentioned a moment ago, what

2  that means is you'll need to provide at least some reasonable

3  documentation to that court that you are in need of appointed

4  counsel.  If that documentation is provided, then the court

5  will appoint a lawyer to represent you.

6         But if you wish to continue to be represented by

7  private counsel, whether that be Mr. Fowler and some additional

8  people or some other people taking over for Mr. Fowler, that's

9  your call.  Do you understand that, sir?

10         DEFENDANT KUEHNE:  Yes, sir, I do.

11         THE COURT:  Okay.  Now, Mr. Chrestman, in your

12  situation it's my understanding that you are asking the court

13  to appoint a lawyer to represent you; is that correct?

14         DEFENDANT CHRESTMAN:  Yes, Your Honor.

15         THE COURT:  Okay.  Are you financially unable to pay

16  for your own lawyer?

17         DEFENDANT CHRESTMAN:  No, I'm not able to, sir.

18         THE COURT:  Okay.  Do you have any -- well, are you

19  currently employed?

20         DEFENDANT CHRESTMAN:  No, sir, I'm not.

21         THE COURT:  When were you last employed?

22         DEFENDANT CHRESTMAN:  It was either March or April of

23  last year.

24         THE COURT:  And in what capacity were you employed?

25         DEFENDANT CHRESTMAN:  I was employed as a sheet metal

```
 1    worker.

 2            THE COURT:  And at approximately what earnings level

 3    were you employed?

 4            DEFENDANT CHRESTMAN:  I was making -- I don't remember

 5    the exact amount, Your Honor.  It was in the 30s an hour.

 6            THE COURT:  Okay.  What would be your best judgment as

 7    to your annual income during the calendar year 2019?

 8            DEFENDANT CHRESTMAN:  2018.

 9            THE COURT:  2019.

10            DEFENDANT CHRESTMAN:  I'm sorry, sir, you cut out

11    again.

12            THE COURT:  I was asking you to state your annual

13    income approximately in the year 2019.

14            DEFENDANT CHRESTMAN:  Oh, '19.  I want to say it was

15    around 40,000, Your Honor, just off the top of my head, if even

16    that.

17            THE COURT:  Do you have any equity in your house or

18    other assets such as bank accounts that you could use to pay

19    for your lawyer?

20            DEFENDANT CHRESTMAN:  In my bank account, sir, now

21    I've probably got -- right now I'm not sure how much I've got

22    in my bank accounts right now, Your Honor.  It's not that much.

23    It's under -- it's under 2,000 for sure.

24            I did -- I did have a -- have some money in my safe at

25    home, and that was to be used for getting the mortgage back
```

1    caught up and repairing the bathroom, the shower.

2          THE COURT:  So how much money is in the safes?

3          DEFENDANT CHRESTMAN:  I believe it was about 10,500.

4          THE COURT:  Very well.  Based on Mr. Chrestman's

5    testimony, I do find that he is indigent, at least in the

6    context of trying to defend the significant charges in this

7    case.  And, therefore, I do find that he's entitled to

8    appointed counsel.

9          Mr. Chrestman, I'm appointing, as I mentioned before,

10   Ms. Ramsey from the Federal Public Defender's Office to

11   represent you to the extent of proceedings in this district

12   only.

13         At such time that you make your first appearance in

14   the District of Columbia, you'll be brought before another

15   judge and he or she will appoint a lawyer to represent you.  It

16   may or may not be somebody from the defender's office in that

17   district.  It may be a lawyer in private practice who takes

18   such appointments.

19         Do you understand that, sir?

20         DEFENDANT CHRESTMAN:  Yes, sir.

21         THE COURT:  Okay.  Turning to the charges in this

22   case, since both of you either have already been provided a

23   copy of the complaint or soon will be -- and I would ask that a

24   copy of the complaint be delivered by our clerk's office to Mr.

25   Kuehne in the marshals lockup so he has a copy to take with him

1   today.

2        I'm not going to reread all of the charges in this

3   complaint, which is very lengthy and very detailed.  But I

4   merely want to establish on the record today that Messrs.

5   Chrestman and Kuehne understand the nature of the charges

6   against them and the corresponding penalties that might be

7   imposed if they're convicted of any of the charges against

8   them.

9        As we go through this, gentlemen, I want to impress

10  upon you that the court is making no finding today as to guilt

11  or innocence.  Indeed under the Constitution of the United

12  States, both of you are presumed innocent of all of the charges

13  against you.

14       Now, with that in mind, as I mentioned before, the two

15  of you are named in a single complaint filed in the District of

16  Columbia, along with other individuals, specifically Louis

17  Enrique Colon, Felicia Konold and Cory Konold.

18       The charges against the two of you are similar or I

19  should say the same in certain respects.  There are, however,

20  additional charges that apply to Mr. Chrestman that do not

21  apply to Mr. Kuehne.

22       Both of you in this complaint are charged with the

23  following crimes:  First, knowingly entering or remaining in

24  any restricted building or grounds without lawful authority;

25  next, violent entry and disorderly conduct on United States

1   Capitol grounds; next, obstruction of justice in the official

2   proceedings of the United States Congress; next, obstruction of

3   a law enforcement officer during civil disorder; and, finally,

4   conspiracy as relates to the foregoing matters.  As I said,

5   those charges apply to both of you.

6          In addition, Mr. Chrestman, you're charged with

7   threatening to assault a federal law enforcement officer during

8   the course of the events in question and also for the use and

9   carrying of a dangerous weapon during the commission of that

10  alleged offense.

11         Now, the prosecutor in this case, Mr. Rask, has

12  provided me as per our court's standard procedure what are

13  known as penalty sheets for these charges.  Again, I'm not

14  making any finding today that either of you are guilty, and

15  these penalties wouldn't necessarily apply in the event that

16  you are found guilty of any of these charges.  But the

17  penalties that I'm going to advise you of now are those that

18  could apply.  These are the worst case scenarios.

19         With that in mind, on the charge of knowingly entering

20  or remaining in any restricted building or grounds without

21  lawful authority, this is a Class A misdemeanor.  The maximum

22  punishment upon a conviction would be up to a year in prison, a

23  fine of up to $100,000, up to a year of supervised release, and

24  a $25 special assessment.

25         However, in connection with that particular charge if

1    it turns out that a dangerous weapon was carried by a

2    particular defendant during the commission of the alleged

3    offense, then those penalties would ratchet up to the felony

4    level and specifically expose you to a prison sentence of up to

5    ten years, a fine of up to a quarter of a million dollars, up

6    to three years of supervised release, and a $100 special

7    assessment.

8              On the charge of violent entry and disorderly conduct

9    on Capitol grounds, that is a Class B misdemeanor, B as in boy.

10   Upon conviction, you'd be looking at a potential of up to six

11   months' imprisonment, a fine of up to $5,000, up to a year of

12   supervised release, and a $10 special assessment.

13             On the charge of obstruction of justice in the

14   proceedings of Congress, this is a felony charge.  Upon

15   conviction, the maximum punishment would be a prison term of up

16   to 20 years, a fine of up to a quarter of a million dollars, up

17   to three years of supervised release, and a $100 special

18   assessment.

19             On the charge of obstruction of a law enforcement

20   officer during a civil disorder, the maximum punishment would

21   be a prison term of up to five years, a fine of up to a quarter

22   of a million dollars, up to three years of supervised release,

23   and a $100 special assessment.

24             Now, on the conspiracy charge, again, that's a felony.

25   Upon conviction, the maximum punishment would be a prison term

1    of up to five years, up to a quarter of a million dollar fine,

2    up to a three year term of supervised release, and a $100

3    special assessment.

4         With regard to the charge against Mr. Chrestman of

5    threatening to assault a federal law enforcement officer, the

6    maximum punishment upon conviction would be a prison term of up

7    to six years, a quarter of a million dollar fine, up to three

8    years of supervised release, and a $100 special assessment.

9         Mr. Chrestman, without asking you whether you admit to

10   or agree with any of these various charges against you, do you

11   understand both the charges and the potential penalties?

12        DEFENDANT CHRESTMAN:  Yes, Your Honor.

13        THE COURT:  Mr. Kuehne, same question to you.  Whether

14   you admit to or agree with any of this, do you understand the

15   various charges that apply to you and what you could be

16   punished by if convicted of those charges?

17        DEFENDANT KUEHNE:  Sir, I understand the charges.

18        THE COURT:  Mr. Rask and Mr. Fowler, it's my

19   understanding that in consultation with our pretrial services

20   office, the government and Mr. Kuehne are in agreement with

21   regard to the conditions of release that should apply between

22   now and his next court appearance in the District of Columbia;

23   is that correct?

24        MR. FOWLER:  Yes, Your Honor.

25        MR. RASK:  Yes, Judge.

```
 1          THE COURT:  Mr. Kuehne, have these conditions been
 2   shared with you at this point?
 3          DEFENDANT KUEHNE:  Sir, my attorney has shared those
 4   conditions directly with me and I understand.
 5          THE COURT:  And you understand, Mr. Kuehne, under
 6   these conditions you would be required to have removed from
 7   your home the various and numerous firearms that are currently
 8   located there?
 9          DEFENDANT KUEHNE:  Sir, I understand and I am aware.
10          THE COURT:  Okay.  And you understand, sir, that
11   that -- the principal purpose for that is for the safety of any
12   supervising pretrial services officer when he comes to check on
13   you?
14          DEFENDANT KUEHNE:  Yes, sir, I'm aware.
15          THE COURT:  Do you understand that under the agreed-to
16   conditions of release, you'll also be on what is known as home
17   detention?
18          DEFENDANT KUEHNE:  Yes, sir.
19          THE COURT:  And subject to electronic monitoring that
20   would be provided or at least contributed to by you in terms of
21   expense?
22          DEFENDANT KUEHNE:  Yes, sir.
23          THE COURT:  So we're clear about what this involves,
24   Mr. Kuehne, under the court's standard order for home detention
25   you would be restricted to your residence at all times except
```

| | |
|---|---|
| 1 | for employment, education, religious services, medical, |
| 2 | substance abuse or mental health treatment, attorney visits, |
| 3 | court appearances, court-ordered obligations or other |
| 4 | activities which might be approved in advance by the pretrial |
| 5 | services office.  Do you understand that, sir? |
| 6 |           DEFENDANT KUEHNE:  Yes, sir, I understand. |
| 7 |           THE COURT:  And am I correct, Mr. Kuehne, that you are |
| 8 | authorizing, given the pandemic situation that we're dealing |
| 9 | with these days, to have Mr. Fowler sign the order setting the |
| 10 | conditions of release for you on your behalf? |
| 11 |           DEFENDANT KUEHNE:  Yes, sir. |
| 12 |           THE COURT:  And a copy of that will be provided to |
| 13 | you, of course, once it's signed by both Mr. Fowler and myself. |
| 14 | Do you understand that? |
| 15 |           DEFENDANT KUEHNE:  Yes, sir. |
| 16 |           THE COURT:  Mr. Kuehne, it's my understanding that you |
| 17 | have very little criminal history of any significance or at |
| 18 | least compared to what we typically see in federal court. |
| 19 | Specifically, it's my understanding you have a -- some minor |
| 20 | traffic violations.  But I want to have a clear, some might say |
| 21 | brutally blunt, discussion with you about the way these |
| 22 | conditions of release work in federal court. |
| 23 |           My experience in the past has been that folks who have |
| 24 | their first appearance in federal court tend to assume that it |
| 25 | works the same as in municipal or state court, meaning that |

 1   provided they just show up for court when they're supposed to

 2   be, they could do pretty much whatever the heck they might want

 3   to do outside of court.  It doesn't work that way here.

 4          And what I mean by that, sir, is this:  The conditions

 5   of release that you've agreed to and that I'm going to set,

 6   particularly given the nature of this case, will be very

 7   closely monitored by our court's pretrial services staff.  And

 8   if a violation is reported to me, we'll be back in court either

 9   in person or by Zoom within a matter of hours or days as

10   opposed to weeks or months.

11          And if there's a significant violation, there's a good

12   chance at that point that I would revoke this release plan and

13   detain you pending further proceedings in the District of

14   Columbia.

15          Now, to be at liberty during the pendency of a

16   criminal case is a significant advantage for a criminal

17   defendant.  So if that happens and these conditions of release

18   are revoked, the only person that's going to get hurt as a

19   practical matter is you.  Do you understand that, sir?

20          DEFENDANT KUEHNE:  Yes, sir, I am very aware.

21          THE COURT:  And do you have any questions about what's

22   expected of you under these conditions?

23          DEFENDANT KUEHNE:  No, sir.  My attorney was very

24   clear, and you, about the -- my expectations levied upon me.

25          THE COURT:  Mr. Kuehne, in the future I suspect that

1    you will likely have questions about what you're permitted to

2    do or not permitted to do.  As I said, you're represented by a

3    very good lawyer and you ought to use him.

4           If you have questions about what you're allowed to do,

5    I suggest strongly that you call both your lawyer and your

6    supervising pretrial officer.  If you simply assume that you

7    should be entitled to do something for whatever reason and you

8    make the wrong conclusion, you're going to end up back in jail.

9    Do you understand that?

10          DEFENDANT KUEHNE:  Yes, sir.

11          THE COURT:  Very well.  The conditions of release that

12   we've discussed are approved for Mr. Kuehne.  And once the

13   order has been fully executed by both Mr. Fowler and myself and

14   once Mr. Kuehne is cleared of any property that may be required

15   of him by the U.S. Marshal Service, he will be released

16   pursuant to that order.

17          Logistically, I would note that it will not be

18   possible as a practical matter for the electronic monitoring

19   that's called for by these conditions to be implemented until

20   Tuesday of next week.  At the risk of stating the obvious, Mr.

21   Kuehne, that should not be an invitation by you to go someplace

22   outside your home since as a practical matter that might have,

23   shall we say, a bad outcome for you.

24          DEFENDANT KUEHNE:  Yes, sir.

25          THE COURT:  Once you're released, Mr. Kuehne, we've

1   been advised that your next appearance in federal court in the

2   District of Columbia will be two weeks from today, that will be

3   February 26th at 1:00.  That hearing will be by Zoom.  If the

4   Zoom invitation, that's what it's called, has not already been

5   provided by our staff to Mr. Fowler, it soon will be.  But both

6   you and your lawyer, whether it be Mr. Fowler or somebody in

7   D.C., need to be on that call.

8           If you're not on that Zoom conference call for that

9   appearance, what's going to happen, Mr. Kuehne, is somebody

10   from the U.S. Marshals Service will go out and find you, arrest

11   you.  And at that point it may take at least many days, if not

12   weeks, for you to be transported in due course from wherever

13   you're found to the District of Columbia.

14           That's not a pleasant exercise and it's something you

15   want to avoid so make sure you're in court at least

16   electronically on February 26th.  Are we clear about that, sir?

17           DEFENDANT KUEHNE:  Yes, sir, crystal clear.

18           THE COURT:  Incidentally, the order setting the

19   conditions of release, and once the processing is completed,

20   will be considered effective only upon the marshals service and

21   pretrial services being advised by either Mr. Kuehne's wife or

22   the family's neighbors who are taking temporary possession of

23   the firearms, unless they're going to the Olathe Police

24   Department, that all the firearms are out of the house.

25           Very well.  Mr. Rask, is there anything else that you

1    believe we need to take up as relates to Mr. Kuehne today?

2    MR. RASK:  Judge, just with respect to Paragraph 7(g)

3    with the individuals to whom Mr. Kuehne should not have

4    contact, we would like to add Mr. Chrestman to that list as

5    well.

6    THE COURT:  Thank you for pointing that out.  I did

7    notice that and I neglected to mention that.

8    Sarah, if you would add that to the conditions of

9    release before the order is circulated to Mr. Fowler for his

10    signature.  Again, among the people that are prohibited

11    contacts for Mr. Kuehne, that would include Mr. Chrestman, the

12    co-defendant appearing today, as well as the other three

13    individuals that are named in the District of Columbia

14    complaint.

15    Anything else, Mr. Rask, on the Kuehne matter?

16    MR. RASK:  No, Your Honor.  Thank you.

17    THE COURT:  Mr. Fowler, you're certainly welcome to

18    stay on the call at this point.  But is there anything else

19    that you believe we need to take up today on behalf of your

20    client?

21    MR. FOWLER:  Your Honor, I just wanted to mention that

22    Mr. Kuehne was prepared to waive removal and obviously he wants

23    to get these proceedings transferred to D.C. as quickly as

24    possible.  With the next hearing already set, I don't know that

25    we need to do that, but I just wanted to make clear that those

1    were his wishes.  And I think they've already been executed,

2    but we're ready to do that.

3          THE COURT:  Well, in that regard, I also neglected to

4    cover some other things that we probably need to.  But in terms

5    of the waiver, Mr. Fowler, that you mentioned, does the

6    defendant waive a preliminary hearing on the complaint, whether

7    it be here in Kansas or in D.C.?

8          MR. FOWLER:  No, Your Honor.  But I think if there is

9    one, it would be -- it would make sense to have it in D.C.

10         THE COURT:  Okay.  So he is waiving his right to a

11   hearing being held here.  Correct?

12         MR. FOWLER:  Yes, Your Honor.

13         THE COURT:  Okay.  And is Mr. Kuehne likewise waiving

14   his right to an identity hearing on the complaint?

15         MR. FOWLER:  Yes, Your Honor.  He's ready to have the

16   case -- the proceedings transferred to D.C. and follow through

17   there.

18         THE COURT:  One other thing I want to visit with you

19   about, Mr. Kuehne -- and this applies to you, Mr. Chrestman, as

20   well -- both of you have been arrested here in Kansas based on

21   a complaint filed in the District of Columbia.  Under these

22   circumstances, I need to advise you of your rights to what is

23   known as transfer of a case.

24         If a defendant wants to have his case transferred from

25   the charging district to the arresting district, he can have

1    that happen, but two things need to happen first.  The first

2    requirement is that the defendant needs to be prepared to plead

3    guilty, and the second requirement is that the U.S. Attorney

4    duly appointed in each of the two districts needs to approve

5    it.

6          Now, I'm not suggesting that either of you should be

7    in a position today to make a decision on whether you want to

8    seek transfer.

9          But, Mr. Kuehne, do you understand generally what I've

10    just told you about the possibility of the transfer of your

11    case from D.C. to Kansas?

12          DEFENDANT KUEHNE:  Yes, sir, I understand.

13          THE COURT:  Mr. Chrestman, likewise, do you

14    understand?

15          DEFENDANT CHRESTMAN:  Yes, sir, I do.

16          THE COURT:  With regard to both defendants, I do want

17    to admonish or at least remind the government of their

18    requirements under the Due Process Protections Act that was

19    enacted last year as well.  Specifically under that statute,

20    the government of the United States is reminded of its

21    requirements under the Supreme Court's decision in *Brady v.*

22    *Maryland* to produce any evidence that may be relevant to the

23    defendant's guilt or innocence or which may be material to

24    those issues.

25          In the hopefully unlikely event that the government

1    fails to produce timely to defense counsel information of the

2    sort that I mentioned, that could result in sanctions,

3    including but not limited to the dismissal of various charges,

4    limitation of evidence that could be presented at trial or the

5    giving of an adverse inference jury instruction.

6            Very well.  Mr. Fowler, anything else with regard to

7    Mr. Kuehne?

8            MR. FOWLER:  No, Your Honor.

9            THE COURT:  Okay.  Mr. Chrestman, as relates to your

10   situation, the government has filed a motion for what is known

11   as pretrial detention.  Very simply put, they want you jailed

12   pending all further proceedings in this case.  And that's a

13   very detailed and lengthy written motion that has been filed

14   earlier today.

15           Ms. Ramsey, may I safely assume that that motion is

16   opposed?

17           MS. RAMSEY:  That is correct, Your Honor.

18           THE COURT:  Does the defendant wish for there to be a

19   hearing on that motion here in Kansas or in the District of

20   Columbia?

21           MS. RAMSEY:  Here in Kansas, Your Honor.

22           THE COURT:  Before we talk about scheduling of that

23   motion for hearing, am I safe in assuming, Ms. Ramsey, that

24   your client is willing to waive his right to an identity

25   hearing?

1          MS. RAMSEY:  Correct, Your Honor.

2          THE COURT:  What is his position with regard to the

3     need for a preliminary hearing on the complaint?

4          MS. RAMSEY:  We are requesting a preliminary hearing

5     as well, Your Honor.  We anticipate that the court would set

6     that at the same time as the detention hearing.

7          THE COURT:  Okay.  When you say "the court," you mean

8     me.  Correct?

9          MS. RAMSEY:  Yes.

10          THE COURT:  Okay.  Well, I -- I have to distinguish

11     from our counterparts in the District of Columbia.

12          MS. RAMSEY:  Understood.

13          THE COURT:  Okay.  Mr. Rask, it's my understanding

14     from the e-mail traffic that was exchanged between and among

15     counsel last evening that the government will be seeking a

16     continuance as per the statute of up to three days; is that

17     correct?

18          MR. RASK:  Yes, Your Honor.

19          THE COURT:  Mindful that we have an intervening

20     weekend, Mr. Rask, and also that I presume that you'll be

21     working in tandem with your colleagues in the District of

22     Columbia, what is the first day next week that the government

23     would be prepared to go forward with a detention and

24     preliminary hearing?

25          MR. RASK:  Judge, I would hope we could do something

1   by Wednesday.

2          THE COURT:  Okay.  Ms. Ramsey, would you be available

3   to go on Wednesday as well?

4          MS. RAMSEY:  Your Honor, myself and Mr. Redmond, who

5   will be with me on the case, are available Wednesday afternoon.

6   We are asking, however, due to anticipated exhibits and the

7   procedure of a preliminary hearing in this case, that the

8   detention and preliminary hearing be conducted in person so we

9   are making that request.  But we are available on Wednesday

10  afternoon approximately after about 1:30.

11         THE COURT:  Okay.  Very well.  The preliminary and

12  detention hearing will be held next Wednesday, February 17 at

13  1:30 p.m. in the largest possible available courtroom that my

14  courtroom deputy can find so that we can hopefully

15  appropriately be socially distanced.

16         Mr. Chrestman, so you understand how this works, the

17  nature of the charges here have what's called a rebuttable

18  presumption that you should be detained pending the trial of

19  the case.  That's not a conclusive presumption, indeed it's

20  very easily rebutted.

21         But in any event, I'm going to order you temporarily

22  detained since the government is entitled to some reasonable

23  amount of time to get prepared for this hearing.  That simply

24  means that you'll be continued to be held in custody by the

25  Marshals Service.

1     I imagine that today they will transport you from the

2  lockup in the courthouse in Kansas City to a detention facility

3  near Leavenworth in -- for further proceedings.  And they'll

4  bring you back to the courthouse next Wednesday for the

5  preliminary and detention hearing.

6     I would ask that if there's going to be a written

7  response to the government's written motion that that response

8  be filed by 3:00 p.m. on Tuesday, February 16th.

9     Mr. Rask, is there anything further that you believe

10 we need to take up today on behalf of the government as relates

11 to Mr. Chrestman?

12     MR. RASK:  No, Your Honor.  Thank you.

13     THE COURT:  Ms. Ramsey or Mr. Redmond, anything

14 further on behalf of Mr. Chrestman that we need to take up

15 today?

16     MS. RAMSEY:  Your Honor, I apologize.  Could you just

17 repeat the time on Wednesday that the hearing will be?

18     THE COURT:  Yes, ma'am.  1:30 p.m.  And the courtroom

19 to be designated later.

20     MS. RAMSEY:  Thank you.  Nothing further.

21     THE COURT:  I'm not sure who else is holding

22 proceedings.  We're -- for the benefit of others that may be

23 listening in, given the pandemic situation, we're only doing --

24     COURTROOM DEPUTY:  Judge, you're cutting out.  We

25 can't hear you.  Judge, we can't hear you.  You're cutting out,

1   Judge.

2          THE COURT:  Okay.  Ms. Ramsey, can you hear me?

3          MS. RAMSEY:  Yes, I can.  Now I can.

4          THE COURT:  Okay.  Is there anything else at this

5   time?

6          MS. RAMSEY:  No, Your Honor.

7          THE COURT:  Okay.  Mr. Redmond, anything else for the

8   good of the order?

9          MR. REDMOND:  (Shakes head from side to side).

10          THE COURT:  He's shaking his head so...

11          MR. REDMOND:  No, Your Honor.

12          THE COURT:  Thank you everybody for your participation

13   in today's proceedings.  Again, I want to remind everybody if

14   somebody ran the red light and recorded today's proceedings by

15   audio or video, other than a certified court reporter, now

16   would be a good time to delete that, lest you incur sanctions

17   in the future.  The same admonition will apply with regard to

18   next week's preliminary and detention hearing.

19          With that we are adjourned.  Thank you.

20          (11:17 a.m. proceedings concluded).

21

22

23

24

25

1

2                              * * *

3

4

5                    C E R T I F I C A T E

6        I certify that the foregoing is a correct transcript

7   from the record of proceedings in the above-entitled matter.

8

9   February 24, 2020.

10

11                              /s/ Kelli Stewart_____
                                KELLI STEWART, CSR, RPR, CRR, RMR
12                              United States Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25